UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No.: 1:19 CR 649 |
| | ) | |
| Plaintiff | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| v. | ) | |
| | ) | |
| QUINTINE WALKER, | ) | |
| | ) | |
| Defendant | ) | ORDER |

Currently pending before the court in the above-captioned case is Defendant Quintine

Walker's ("Defendant" or "Walker") Motion to Suppress Evidence ("Motion") (ECF No. 105). For

the reasons that follow, the court denies the Motion.

## I.    BACKGROUND

**A.    Facts**

On August 13, 2019, at approximately 2:10 a.m., an Ohio Highway Patrol officer, Trooper

Jason Turner ("Trooper Turner"), observed a silver Chrysler 300 stopped at a red light. When the

vehicle failed to proceed through the intersection after the traffic light cycled through multiple red

and green lights, Trooper Turner ran the license plate on the Chrysler. Trooper Turner eventually

turned on his siren lights and approached the still stagnant vehicle, where he allegedly found the

Defendant passed out in the driver's seat with the gear shift in drive and Walker's foot on the brake.

After flashing his flashlight into the car multiple times, to which he received no response from

Defendant for several minutes, Trooper Turner called the Cleveland Police Department for

assistance.

After Cleveland officers arrived to the scene shortly thereafter, one officer positioned his patrol car in front of the Chrysler, allegedly to prevent Defendant's car from rolling forward. Trooper Turner and the responding officers then knocked on the driver's window several times and announced themselves as police. They then opened the driver's door and instructed Walker to put his hands on the steering wheel. Trooper Turner and Defendant shared a few exchanges, during which Defendant repeatedly confirmed that he understood Trooper Turner's statements. After the officers removed Walker from the car, they spotted a handgun in Walker's waistband. Officers then placed Walker in handcuffs and read him his *Miranda* rights. Once Walker was *Mirandized*, officers also found $6,000 on his person, as well as a cigar box containing separate plastic bags filled with suspected controlled substances. Trooper Turner then called for a tow truck, and Walker was cited for driving under the influence, failure to reinstate his driver's license, and impeding traffic.

Approximately two weeks later, just before midnight on September 1, 2019, Walker was a passenger in a vehicle driven and owned by Tyisha Abrams ("Abrams" or "Ms. Abrams") when Cleveland police officers, who were wearing body cameras, conducted a traffic stop for a suspected window tint violation. After concluding that the tint was too dark, the officers returned to their patrol car where one officer, Lieutenant David Skrletts ("Officer Skrletts"), wrote a citation for the tint violation. The officers also ran a routine records check on Defendant's and Abrams's identification, which revealed an outstanding warrant for Defendant's arrest which prompted the officers to call for backup. Once additional units arrived, several officers walked to the passenger side of the car and took Defendant into custody.

With Defendant handcuffed and behind the car, Officer Skrletts asked Abrams to exit the vehicle and move to the sidewalk where he could safely finish issuing the tint citation. According to Officer Skrletts, he looked down as Abrams got out of the car and noticed what appeared to be

a handgun sticking out from under the driver's seat. The body camera footage shows that Officer Skrletts knelt down and briefly leaned into the doorframe for a closer look. Although the camera did not capture the area under the seat, the video shows that Officer Skrletts quickly stood up, walked straight to Abrams, placed her in handcuffs, and questioned her about the gun. Abrams initially claimed the handgun as her own but promptly recanted when Officer Skrletts explained she could face significant legal consequences for having the gun without a concealed carry permit. A subsequent search of the car revealed ammunition, methamphetamine, cocaine, and heroin. After he was issued his *Miranda* warnings, Defendant later admitted each of these items as well as the gun belonged to him.

**B.      Procedural History**

The procedural background in this case is extensive. On October 24, 2019, a federal grand jury returned a six-count Indictment against Defendant stemming from the events on September 1, 2019, alleging one count of being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2); four counts of possession with intent to distribute controlled substances, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C); and one count of possessing a firearm in furtherance of a drug crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i). (Indictment, ECF No. 1). Two weeks later, a grand jury returned a Superseding Indictment, which added five additional firearm and drug charges stemming from events that occurred on August 13, 2019. (Superseding Indictment, ECF No. 7). On August 28, 2020, Walker filed a Motion to Suppress Evidence (ECF No. 38), contending that the officers had unlawfully seized and searched the Ford Focus in which Walker was a passenger on September 1, 2019.[1] The Government filed its Response

_____

[1]      Walker actually filed an initial Motion to Suppress (ECF No. 33) one day earlier, but it contained a minor typographical error. The "corrected" version of the motion filed on August 28, 2020, fixed this error, but was otherwise identical to

in Opposition (ECF No. 41) on September 9, 2020. Walker did not file a Reply. After holding a suppression hearing, the court denied Walker's Motion to Suppress for lack of standing on January 28, 2021. (ECF No. 45).

On May 27, 2021, the court held a final pretrial conference, and the case was set for trial on July 12, 2021. Walker then filed two unopposed motions for 60-day continuances, amounting to a 120-day continuance total, which the court granted. On December 2, 2021, he filed a Motion for Reconsideration (ECF No. 52) regarding the court's January 28, 2021 Order, denying his initial Motion to Suppress. In his Motion for Reconsideration, Walker argued that he had standing to challenge the search of Ms. Abrams's vehicle. On December 9, 2021, the Government filed its Response in Opposition (ECF No. 54) to Walker's Motion for Reconsideration. Walker did not file a Reply. On February 9, 2022, the court issued its Order, denying Defendant's Motion for Reconsideration. In its Order, the court concluded that, while Walker had standing to challenge the search and seizure of the Ford Focus from September 1, his Fourth Amendment challenge failed on the merits. While Walker's Motion for Reconsideration was pending, the case was once again set for trial beginning on February 28, 2022.

On February 9, 2022, Defendant filed another unopposed motion for a 60-day continuance (ECF No. 60), which the court granted. The court then set a second final pretrial conference for May 11, 2022, with the trial scheduled for June 13, 2022. On May 11, 2022, Defendant filed an unopposed motion for a 45-day continuance (ECF No. 63), which the court granted. Accordingly, a third final pretrial conference was scheduled for September 6, 2022, and trial was rescheduled to begin on October 10, 2022. (ECF No. 64). On July 15, 2022, Walker filed a second Motion to Suppress (ECF No. 65), in which he challenged the search of his cell phone pursuant to a search

---

the initial motion.

warrant. The Government filed its Response in Opposition (ECF No. 66) on July 29, 2022. Walker filed a Reply (ECF No. 68) to this second Motion to Suppress on August 11, 2022. On September 12, 2022, the court denied Walker's second Motion to Suppress, finding that the search warrant with respect to Walker's cell phone was supported by probable cause. (ECF No. 70).

Shortly before issuing its ruling on Walker's second Motion to Suppress, the court held a pretrial conference during which trial was rescheduled to November 28, 2022. On September 23, 2022, Walker filed an unopposed motion for a 60-day continuance (ECF No. 72), which the court granted. Trial was therefore rescheduled for January 30, 2023. At a hearing on January 17, 2023, the court continued the trial—which was scheduled to start on January 30, 2023—so that the parties could discuss possible plea agreements or offers before the case was reset for trial. The court then scheduled a pretrial conference for February 17, 2023. At this subsequent pretrial conference, Defendant asked for a two-week continuance to further review the Government's plea offer, as well as to review additional information relevant to his case. The court then granted Walker's request and scheduled a pretrial conference for mid-March.

On March 13, 2023, the court held another pretrial conference, during which time the court granted Walker's then-pending request for new counsel. At this conference, the court emphasized that Defendant had not provided reasons requiring that his counsel be removed. However, in the interest of moving the case along at that time, the court granted Defendant's request. Defendant's outgoing counsel agreed to provide all discovery in his possession to Defendant's new counsel once one was appointed. The Government also agreed to assist the incoming counsel and provide any further discovery needed. On April 18, 2023, Defendant's newly-appointed counsel made an unopposed request for a 60-day continuance, which the court granted. Approximately sixty days later, defense counsel made another unopposed request for a 30-day continuance, which the court

also granted. On July 21, 2023, during a pretrial conference, the parties informed the court that Walker had rejected the Government's plea offer. The parties then requested that the case be set for trial as soon as possible. After further discussion with the parties, trial was then rescheduled for January 22, 2024, with the final pretrial conference set for December 14, 2023. (ECF No. 77).

On November 7, 2023, the court held a pretrial conference regarding a *pro se* letter the court received from Defendant regarding his then-appointed counsel. After discussion with the parties, the court determined that there were irreconcilable differences between Defendant and his then-existing counsel. The following day, Walker received new court-appointed counsel. On December 14, 2023, at the scheduled final pretrial conference, Defendant's newly-appointed (and current) counsel made an unopposed request for a continuance to receive and review additional discovery to be provided by the Government—some of which the Government indicated was not in its possession—as well as to determine whether Defendant would be filing any additional motions. The court granted Walker's request and canceled the trial, which was set to begin on January 22, 2024. The court held a pretrial conference on February 12, 2024, during which the court granted a 30-day continuance so that the parties could work out certain outstanding discovery issues. During a pretrial conference on March 12, 2024, the Government explained that it was still seeking to determine whether there were additional documents it needed to turn over to Defendant in discovery. The court then laid out deadlines for the Government to complete its review in addition to setting out deadlines for the parties to brief any intended motions to suppress or motions to dismiss.

On April 25, 2024, Defendant filed the Motion to Suppress (ECF No. 105) considered herein. On May 16, 2024, the Government filed its Response in Opposition. (ECF No. 109). On May 24, 2024, Walker filed his Reply (ECF No. 113). On July 9, 2024, the court held a hearing regarding Walker's pending Motion considered herein. Walker's Motion is now ripe for determination.

## II.  LEGAL STANDARD

### A.  Reopening a Suppression Hearing

The Sixth Circuit has held that, "[d]istrict courts have inherent power to reconsider interlocutory orders and reopen any part of a case before entry of a final judgment." *In re Saffady*, 524 F.3d 799, 803 (6th Cir. 2008). Consistent with this principle, district courts have "sound discretion" in deciding whether to reopen a suppression hearing. *United States v. White*, 455 F.App'x. 647, 650 (6th Cir. 2012) (citing *United States v. Carter*, 374 F.3d 399, 405 (6th Cir. 2004), *vacated on other grounds by Carter v. United States*, 543 U.S. 1111 (2005)). While district courts are able to reopen suppression hearings, they should be "extremely reluctant" to do so. *United States v. Pittman*, 816 F.3d 419, 424 (6th Cir. 2016) (citations omitted); *Carter*, 374 F.3d at 405.

The Sixth Circuit has outlined several factors that a court should consider in deciding whether to reopen a suppression hearing. *See White*, 455 F.App'x at 650–51. "First, the party seeking to reopen must provide a reasonable explanation for failing to present the evidence initially. Then the timeliness of the motion, the character of the testimony, the effect of granting the motion, and whether the opposing party will be prejudiced by reopening the hearing should be considered." *Id.* (citing *United States v. Blankenship*, 775 F.2d 735, 741 (6th Cir. 1985)). The most important factor is whether the opposing party would be prejudiced by reopening. *United States v. Adams*, 655 F.App'x 312, 321 (6th Cir. 2016) (citing *Blankenship*, 775 F.2d at 741).

Notably, courts apply the same test when deciding (1) whether to reopen a suppression hearing to address issues not previously raised by prior suppression motions, or (2) when deciding whether to reconsider the court's prior rulings on a motion to suppress. *See Adams*, 655 F.App'x at 321; *see also United States v. James*, 2020 WL 13598804, at *4 (6th Cir. Jul. 21, 2020).

### B.  Fourth Amendment

The Fourth Amendment protects against unreasonable searches and seizures by generally forbidding the introduction in court of evidence obtained by government officers through a violation of the Amendment. *Olmstead v. United States*, 277 U.S. 438, 462 (1928). To safeguard this right, evidence secured through an illegal search or seizure may not be used in criminal proceedings. *Mapp v. Ohio*, 367 U.S. 643 (1961). Although the Fourth Amendment "contains no provision expressly precluding the use of evidence obtained in violation of its commands," the exclusionary rule "operates as 'a judicially created remedy . . . through its deterrent effect, rather than a personal constitutional right of the party aggrieved.'" *United States v. Leon*, 468 U.S. 897, 906 (1984) (quoting *United States v. Calandra*, 414 U.S. 338, 348 (1974)).

The touchstone of Fourth Amendment analysis is reasonableness. It is well-settled under the Fourth Amendment "that a search conducted without a warrant issued upon probable cause is 'per se unreasonable . . . subject only to a few specifically established and well-delineated exceptions.'" *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973) (citations omitted). As for seizures, *Terry v. Ohio*, 392 U.S. 1 (1968), and its progeny, allow temporary detentions that are "limited in [both] scope and duration." *United States v. Everett*, 601 F.3d 484, 488 (6th Cir. 2010) (quoting *Florida v. Royer*, 460 U.S. 491, 500 (1983)). Under *Terry*, certain seizures are justifiable absent probable cause if officers have a reasonable, articulable suspicion—based on a totality of the circumstances—that a person has committed a crime. *See Royer*, 460 U.S. at 498; *see also United States v. Sokolow*, 490 U.S. 1, 7–8 (1989). To qualify as a reasonable seizure under the Fourth Amendment, the detention "must . . . last no longer than is necessary to effectuate the purpose of the stop," and "the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." *Everett*, 601 F.3d at 488–89 (quoting *Royer*, 460 U.S. at 500).

### C.    Fifth Amendment

The Fifth Amendment provides criminal defendants with a right against self-incrimination. U.S. Const. Amend. V. To safeguard this privilege, the Supreme Court established a procedure in *Miranda v. Arizona*, 384 U.S. 436 (1966), which prevents the prosecution from using a defendant's statement at trial unless the Government can demonstrate that, prior to any custodial interrogation, the defendant was adequately informed of their Fifth Amendment rights. *See United States v. Salvo*, 133 F.3d 943, 948 (6th Cir. 1998) (citing *Stansbury v. California*, 511 U.S. 318, 322 (1994)). If a suspect has received and understood their *Miranda* rights, and does not explicitly invoke them, then the suspect "waives their right to remain silent by making an uncoerced statement to the police." *United States v. Williams*, 998 F.3d 716, 736 (6th Cir. 2021) (quoting *Berghuis v. Thompkins*, 560 U.S. 370, 388–89 (2010)).

The waiver of this right must be "voluntarily, knowingly and intelligently" given. *Williams*, 998 F.3d at 736 (quoting *Miranda*, 384 U.S. at 444). However, when no express waiver, either oral or written, is obtained, waiver may be inferred where a defendant is properly and fully informed of his *Miranda* rights, indicates his understanding, and subsequently fails to invoke those rights by instead showing a willingness to answer questions. *United States v. Nichols*, 512 F.3d 789, 798 (6th Cir. 2008), *overruled on other grounds as recognized in United States v. Cousins*, 448 F.App'x 593, 594 (6th Cir. 2012). The burden is on the government to prove, by a preponderance of the evidence, that: (1) *Miranda* warnings were given; and (2) the defendant knowingly and intelligently waived his privilege against self-incrimination. *See Miranda*, 284 U.S. at 475; *Nichols*, 512 F.3d at 798. To guide this analysis regarding whether a suspect made this waiver with full awareness of both the nature of the right being abandoned and the consequences of doing so, courts look at a "totality of the circumstances" concerning whether "a defendant's will was overborne in a particular case."

*Williams*, 998 F.3d at 736–37.

Accordingly, courts will invalidate a *Miranda* waiver if: (1) the police activity was objectively coercive; (2) the coercion in question was sufficient to overbear the defendant's will; and (3) the alleged police misconduct was the crucial motivating factor in the defendant's decision to offer the statements. *United States v. Mahan*, 190 F.3d 416, 422 (6th Cir. 1999). In other words, "[a] prerequisite to finding that a defendant involuntarily waived his *Miranda* rights is some element of official coercion." *Wesson v. Shoop*, 17 F.4th 700, 704 (6th Cir. 2021) ("In requiring a waiver to be voluntary, the Fifth Amendment does not concern itself 'with moral and psychological pressures to confess emanating from sources other than official coercion,' [...] for the 'privilege has always depended on the absence of police overreaching, not on 'free choice' in any broader sense of the word.'")

## III.    ANALYSIS

### A.    August 13, 2019 Traffic Stop

For the first time in the case's extensive history, Walker challenges evidence arising from the events that took place on August 13, 2019. Walker argues in the instant Motion to Suppress that officers did not have reasonable suspicion to stop, nor did they have probable cause to arrest him on this date. (Mot. at PageID #831, ECF No. 105). Walker also argues for the first time that the waiver of his *Miranda* rights on August 13 was invalid because of his inebriated state. Consequently, Walker contends that any statements he made during the course of his arrest must be suppressed. (*Id.* at PageID #845–48). In response, in addition to challenging Walker's argument on the merits, the Government points out that Walker's Motion was filed without seeking leave to reopen the court's prior suppression hearing or requesting reconsideration of the court's prior orders denying Walker's previous motions to suppress. (Govt.'s Opp. Br. at PageID #965, ECF No. 109). The court finds this

point to be well-taken.

Having already decided two prior motions to suppress, one motion for reconsideration, and having already held a suppression hearing in this case, the court construes the Motion considered herein with respect to the August 13 stop as a motion to reopen the prior suppression hearing to consider new issues regarding the August stop.

1.     *Motion to Reopen*

The court must now decide the threshold issue of whether to reopen the suppression hearing in this case with respect to the events that took place on August 13, 2019. *See White*, 455 F.App'x. at 650–51. As part of this inquiry, the moving party must first provide a reasonable explanation for why it failed to present the evidence initially. *Id.*; *see also United States v. Holland*, 522 F.App'x. 265, 270 (6th Cir. 2013). As noted in the court's order denying Walker's second suppression motion, "generally, absent new evidence or evidence that was unobtainable before the original suppression hearing, or any new issues that became relevant since the initial hearing, the reopening of a suppression hearing is unwarranted." (February 9, 2022 Order at PageID #299, ECF No. 59) (citing *United States v. Baker*, 2011 WL 13142576, at *2 (W.D. Tenn. Dec. 1, 2011)).

Here, unlike with Defendant's second motion to suppress the electronic evidence derived from his cell phones, Walker does not point to newly discovered or recently produced evidence regarding the August stop as the basis for the instant suppression motion. (*Compare* Second Motion to Suppress at PageID #323, ECF No. 65 *with* Mot., ECF No. 105); (*see also* Reply at PageID #1097–1106, ECF No. 113). Walker also offered no explanation as to why he did not challenge the August 13 traffic stop and subsequent arrest previously. (*See generally* Mot., ECF No. 105). He instead devotes a substantial part of his Reply Brief to explaining why he failed to challenge certain issues relative to the September traffic stop. (*See* Reply at PageID #1076–82, ECF No. 113).

However, when the court held oral argument to discuss the instant Motion, Walker's counsel raised for the first time that Defendant's prior counsel may have been ineffective in failing to previously raise that claim. The Sixth Circuit has explained that, "prior counsel's poor performance could in some circumstances satisfy the moving party's threshold showing" of providing a reasonable explanation for why a defendant failed to raise the issue initially. *Carter*, 374 F.3d at 406; *Holland*, 522 F.App'x at 270. Accordingly, the court will next consider whether the remaining reconsideration factors weigh in favor of reopening the suppression hearing to consider Walker's new arguments with respect to the August 13 traffic stop. The court concludes they do not.

Here, Walker filed the Motion considered herein nearly four years after filing his first motion to suppress and over three years after the court denied that first motion, making Walker's new arguments incredibly untimely.[2] *See Pittman*, 816 F.3d at 424 (finding a defendant's second motion to dismiss untimely where it was filed nearly eighteen months after the court's initial ruling on the defendant's first suppression motion); *James*, 2020 WL 13598804, at *4 (finding a defendant's fourth motion to suppress untimely where it was filed over a year-and-a-half after the court denied his first motion to suppress). In addition, Walker had two subsequent counsel following the filing of his first suppression motion, neither of whom raised the issues Walker raises now. In that respect, the first factor weighs heavily against reopening the suppression hearing. Moreover, permitting Walker to reopen the suppression hearing over three-and-a-half years after the court initially held the suppression hearing in this case would not promote the public interest in timely criminal trials. This is especially true where, as here, a defendant has contributed to certain delays in the case by

---

[2]    Notably, the court already found that Walker's prior Motion for Reconsideration was "substantially delayed." (*See* February 9, 2022 Order at PageID #300, ECF No. 59). However, the court decided to reconsider its prior order denying Walker's initial motion to suppress because Defendant provided a reasonable explanation for his failing to present the proffered evidence initially. (*Id.*)

repeatedly requesting new counsel, even when in one instance the court determined that there was no good basis for it to remove one of Defendant's prior counsel. It would also prejudice the Government substantially, which has been prosecuting this case for nearly five years, to grant Defendant's Motion at this late stage in the case. Accordingly, the court finds that, on balance, the reconsideration factors weigh heavily against reopening the suppression hearing with respect to the August 13 traffic stop.

        2.     *Merits*

Considering Walker's arguments on the merits regarding the August 13 traffic stop, the subsequent search, and his statements, the court finds that Defendant's Motion should be denied in respect to all claims. As noted previously, Walker argues in the instant Motion to Suppress that officers did not have reasonable suspicion to stop or search the Chrysler 300, nor did they have probable cause to arrest him on this date. Walker also argues that the waiver of his *Miranda* rights on August 13 was invalid because of his inebriated state.

        a)    <u>Traffic Stop</u>

When Trooper Turner approached the car Walker was driving, he observed Walker failing to proceed through an intersection after a traffic light cycled through multiple red and green lights. (Ex. A to Def.'s Mot. at 1:00–3:39, ECF No. 105). When the car remained stationary through a third green light, Trooper Turner approached the vehicle and observed an unconscious man in the driver's seat. These facts alone raise a reasonable, articulable basis for suspicion to support an investigative stop under *Terry*. Despite Walker's contention, the mere fact that oncoming traffic could have simply driven around the Defendant does not negate the fact that sitting at a green light for an extended period of time violates common sense principles about the rules of the road. There is also sufficient

evidence in the record that demonstrates the officers had enough information to conclude that Walker was obstructing traffic. Therefore, officers had a lawful basis to perform a traffic stop.

Similarly, Walker's argument that there could have been an alternative explanation for his incoherent state on August 13—that he might have been unconscious for medical reasons rather than as a result of substance use—is inapposite. The mere fact that there might have been an alternative explanation for his non-responsive state does not preclude the reasonable conclusion that he was unconscious while driving as a result of substance abuse, which would have been evidence of criminal activity. *See United States v. Jordan*, 100 F.4th 714, 719 (6th Cir. 2024) ("[A]n officer doesn't need to rule out innocuous explanations for suspicious behavior in order for his suspicion to be 'reasonable.'"). Having found Defendant sitting stationary at a green light in the driver's seat of a running car while seemingly under the influence, the officers had reasonable suspicion to investigate the situation further. Under a totality of the circumstances, all of the above information supplied officers with reasonable suspicion to stop Walker.

> b)        Search of the Chrysler 300

Walker also contends that the officers lacked lawful grounds to conduct a warrantless search of the Chrysler 300 he was driving on August 13. (Mot. at PageID #840–44, ECF No. 105). The Government asserts otherwise, arguing that the community-caretaking doctrine and the plain-view doctrine, as well as the automobile exception and the inventory search exception to the warrant requirement, all supplied the responding officers with lawful authority to search the Chrysler. (Opp. Br. at PageID #989–94, ECF No. 109). On Reply, Walker argues that the Government's reliance on the community-caretaking doctrine is misplaced. (Reply at PageID #1100–04, ECF No. 113). Walker offers no response to the other exceptions raised by the Government. (*See id.*) The court finds the

Government's community-caretaking and plain-view arguments, as well as its reliance on the automobile exception, persuasive.

Before the Cleveland police officers even arrived to the scene, Trooper Turner waited behind the Defendant's car for multiple minutes while the traffic light cycled through several green and red lights. (Ex. A to Def.'s Mot. at 1:08–3:40). After this extended time, Trooper Turner turned on his siren lights, which still did not prompt a response from the Defendant. (*Id.* at 3:40–4:00). Trooper Turner then approached the running car with a flashlight and flashed it into the Chrysler several times to no response. (*Id.* at 4:00–4:30). At this time, it appears that Trooper Turner discovered a nonresponsive Walker in the car, so he promptly called Cleveland police for back-up. (*Id.* at 4:30–4:36). While waiting for officers to arrive, Trooper Turner continued to flash his light in the Defendant's car for over five minutes—still with no response. (*Id.* at 4:36–10:00); (Ex. B to Def.'s Mot. at 0:01–1:15). When the Cleveland officers finally arrive to the scene, Trooper Turner explained to the officers that Defendant's foot was on the brake and asked officers to position their car in front of Defendant's car to prevent the Chrysler from potentially proceeding through the intersection. (Ex. B to Def.'s Mot. at 1:30–2:20).

The community-caretaking exception permits officers to enter private property for a limited purpose that is unrelated to criminal investigation. *United States v. Lewis*, 869 F.3d 460, 462 (6th Cir. 2017). For instance, in *United States v. Rohrig*, 98 F.3d 1506, 1521–22 (6th Cir. 1996), the Sixth Circuit found that local police officers did not violate the Fourth Amendment by responding to complaints of loud music blaring from a private home in the middle of the night and entered the home without a warrant "for the limited purpose of locating and abating [the] nuisance." There, the circuit court concluded that such an action fell within the community-caretaker exception to the warrant requirement. Here, the court finds that the risk of Walker potentially driving into the street

while apparently under the influence posed a sufficient risk of danger for officers to open the car's door. *See Rohrig*, 98 F.3d at 1519 (explaining that warrantless entries are clearly reasonable when supported under a "risk of danger" rationale).

The officers's reasonableness is further evidenced by the fact that, before opening the car door, Trooper Turner repeatedly knocked on the window and announced his presence to Walker. (Ex. B to Def.'s Mot. at 2:30–2:35, ECF No. 105). Given the extended time that Walker remained unresponsive prior to the arrival of Cleveland officers, it was reasonable for officers to open the driver's door to obtain Walker's attention and deal with the situation further. *See Lewis*, 869 F.3d at 462 (explaining that "the Fourth Amendment does not preclude the mere opening of the vehicle door" where officers were trying to escort an intoxicated woman into the passenger seat of her unconscious boyfriend's truck). In light of the above, the court reasons that officer's warrantless entry into the Chrysler was a reasonable execution of the officers's community-caretaking function.

The court also concludes that the officers's actions were justified under the plain-view doctrine and the automobile exception. Once officers asked Walker to exit the vehicle, they allegedly found a firearm in plain-view on his waistband.[3] The plain-view doctrine allows police to observe and seize an object without a warrant "if police are lawfully in a position from which they view [the] object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object." *United States v. Herndon*, 501 F.3d 683, 692 (6th Cir. 2007) (quoting *Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993)). When the officers opened the car door and observed a firearm in plain-view on Walker's waistband, this additional information, when combined with Walker's prior nonresponsiveness and unusual behavior at the traffic light, further raised their

---

[3]     As explained in one of the court's prior orders, police officers may order drivers out of a car when conducting a traffic stop without running afoul of the Fourth Amendment. (*See* January 28, 2021 Order at PageID #238, ECF No. 45).

suspicions. When officers found $6,000 on Walker's person, all of the above supplied officers with probable cause to search the vehicle. Therefore, the additional evidence seized from the Chrysler falls into the long-established automobile exception to the warrant requirement, which permits officers to search a vehicle without a warrant if they have probable cause to believe that the car has evidence of criminal activity. *See Thorton v. United States*, 541 U.S. 615, 617 (2004); *United States v. Smith*, 510 F.3d 641, 647–48 (6th Cir. 2007). Accordingly, Walker's attempt to now suppress the evidence derived from the search of the Chrysler 300 also fails on the merits.

<u>c)</u>     <u>Walker's Statements</u>

Finally, Walker argues that his level of apparent intoxication during the August 13 traffic stop made him unable to understand the rights being abandoned after he was given his *Miranda* warnings. (Mot. at PageID #846, ECF No. 105). Specifically, Walker attempts to suppress two statements: (1) that he said won the $6,000 found in his possession from the lottery, and (2) that he had the firearm found in his possession to "protect himself" given his lottery winnings. (*Id.* at PageID #845). As already established, the chief concern of a suspect's waiver of their *Miranda* rights is whether officers coerced the suspect into waiving their Fifth Amendment right against self-incrimination. *Wesson*, 17 F.4th at 704. The Sixth Circuit has explained that the Fifth Amendment is concerned with *police* coercion, "not self-created explanations for confessions," such as a defendant's intoxication. *Id.* at 705 (explaining that the Sixth Circuit has held that a suspect with a blood-alcohol content of 0.25 had voluntarily confessed given the absence of evidence of police coercion).

Here, the record does not reflect any evidence of the officers coercing Walker into making the statements he now seeks to suppress. Before Trooper Turner issued Walker his *Miranda* rights, Walker readily responded to the officers's statements, including their instructions to keep his hands

on the steering wheel. (Ex. B to Def.'s Mot. at 2:25–3:20, ECF No. 105). When asked by officers, Walker also repeatedly confirmed that he understood what was going on and that he understood the officers's statements. (*Id.*) For instance, when Trooper Turner asked whether Walker understood that Turner was going to unsnap his seatbelt, Walker responded, "Yes, sir." (*Id.* at 3:05–3:10). He complied with officers's instructions to put the Chrysler in park before exiting the vehicle, as well as their instructions to put his arms behind his back before they placed him in handcuffs. (*Id.* at 3:37–3:45). He answered officers when they asked him for his name before issuing Defendant his *Miranda* warnings. (*Id.* 4:12–4:20). After officers *Mirandized* him, Walker confirmed that he understood his rights. (*Id.* at 4:12–4:38). In short, Walker readily responded to officers's questions both before and after they issued Defendant his *Miranda* warnings. Therefore, based on a totality of the circumstances, the court finds no evidence of police coercion in this case. In the absence of such, the court sees no basis to find that Defendant's waiver of his *Miranda* rights was involuntary. Accordingly, even if the reconsideration factors weighed in favor of reopening the suppression hearing on this issue, the court would deny Defendant's motion to suppress the statements Walker made following the August 13 traffic stop on the merits.

**B.    September 1, 2019 Traffic Stop**

In the instant Motion, Walker raises four distinct arguments with respect to the September 1 traffic stop. First, Walker argues for the first time that officers did not have reasonable suspicion to stop Ms. Abrams's Ford Focus. Second, Walker once again contends that the officers's search of the Ford Focus, which revealed the handgun under the driver's seat, was unconstitutional. Third, Walker argues for the first time that officers did not have reasonable suspicion to seize him for a seatbelt violation, nor did they have probable cause to arrest him for the events that took place on September 1, 2019. Finally, Walker contends that his confessions on September 1 were involuntary

and must therefore be suppressed.

Unlike the August 13 stop, the September 1 traffic stop has been the central subject of several evidentiary challenges and rulings in this case. (*See* ECF Nos. 38, 45, 52, 59). Accordingly, the court finds even less of a basis to reopen suppression hearing with regard to the September 1 stop—particularly for issues the court has previously ruled on. As stated above, having already decided a motion to suppress, a motion for reconsideration, and having already held a suppression hearing regarding the events that took place on September 1, the court construes the Motion considered herein with respect to the September 1 stop as a motion for reconsideration. *See White*, 455 F.App'x. at 650. However, because the court has not yet addressed the merits of Walker's Fifth amendment challenge from this second date, the court construes this issue as a motion to reopen the suppression hearing to decide a new issue.

     *1.*    *Stop of Ms. Abrams's car*

In the instant Motion to Suppress, Walker argues that newly discovered evidence regarding the arresting officers's allegedly limited experience with enforcing window tint violations, as well as the Cleveland Police Department's contended lack of training in window tint detection, warrant reopening the court's prior suppression hearing.[4] (*See* Mot. at PageID #849–853, ECF No. 105); (*see also* Reply at PageID #1076–82, ECF No. 113). As justification for his delay, Walker explains that the Government did not previously provide the above evidence as requested and required. Defendant points to his prior counsel's discovery request from August 2020 to provide "any and all

---

[4]    Although Walker contends that the officers had limited experience enforcing window tint violations, the Government points out that Officer Skrletts is a fourteen-year veteran of the Cleveland Police Department who has issued several excessive tint citations throughout the course of his career. (*See* Opp. Br. at PageID #972, ECF No. 109); (Ex. N to Def.'s Mot. at PageID #903, ECF No. 105-7).

information...which...bears adversely upon the credibility of the witnesses(es) with respect to the subject matter of the instant Indictment" to support his contention that the Government failed to provide critical evidence for his defense. The court finds this argument unpersuasive.

Under the law of the case doctrine, it is well-established that courts should generally decline to revisit issues that they have already decided in an earlier part of the case. *See Samons v. Nat'l Mines Corp.*, 25 F.4th 455, 463 (6th Cir. 2022) ("Law of the case thus promotes judicial efficiency by prohibiting parties from indefinitely relitigating the same issue that a court resolved in an earlier part of the case."); *United States v. Cunningham*, 679 F.3d 355, 376–77 (6th Cir. 2012) (recognizing the doctrine's applicability in criminal contexts). In the absence of a compelling reason, such as a change in the law or an obvious mistake, the court should generally decline to do so. *Samons*, 25 F.4th at 463 (citations omitted). The court finds no compelling reason to do so here.

In Walker's initial Motion to Suppress, he opened his argument by stating: "Mr. Walker does not contest whether there was a proper basis for the original stop of Ms. Abrams' vehicle. *Investigation conducted by defense counsel* indicates that officers had probable cause to believe the window tint on the vehicle was too dark." (Initial Motion to Suppress at PageID #202, ECF No. 38) (emphasis added). The court relied on this concession in its first order denying Walker's initial motion to suppress. (January 28, 2021 Order at PageID #235, ECF No. 45). Notably, Walker did not challenge this concession in his subsequent motion for reconsideration. (*See generally* Motion for Reconsideration, ECF No. 52). Although he initially offered no explanation for why he previously conceded that officers had probable cause for an excessive tint violation, as noted above, at oral argument, Walker's counsel indicated that Defendant's prior counsel may have been ineffective in

making this concession.[5] (*See* Reply at PageID #1076–82, ECF No. 113). As already explained, in certain circumstances, ineffective assistance of counsel could be a reasonable explanation for reopening the suppression hearing. *See Holland*, 522 F.App'x at 270. However, for the same reasons explained above with respect to the August 13 stop, the court finds the reconsideration factors weigh against reopening the suppression motion.

Moreover, Defendant's contention that the aforementioned discovery request required the Government to turn over evidence related to the Cleveland Police Department's excessive tint detection training, as well as the arresting officers' prior experience with enforcing excessive tint violations, is also without merit. At oral argument, Walker's counsel doubled-down on this point, opining that the Government was required to produce the above-mentioned discovery under the *Brady* rule and/or as *Giglio* material. Notably, Walker's first counsel, the same counsel who initially made the discovery request, later conceded that the officers had probable cause to believe that Ms. Abrams's car was in violation of the excessive tint statute. (Initial Mot. to Suppress at PageID #202, ECF No. 38). Therefore, it would be a stretch to now argue that the Government was withholding evidence related to an issue Defendant's own counsel independently investigated and declined to pursue. In other words, it cannot be said that the Government was withholding evidence that was not requested of it, particularly considering the generalized nature of the above discovery request.[6]

In addition, the contested discovery does not implicate the *Brady* rule, nor can it be characterized as *Giglio* material. Under *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the prosecution

---

[5]     In his Reply brief, Defendant briefly notes that his previous counsel made an "uninformed concession" regarding his arrest on this date. (Reply at PageID #1082, ECF No. 113). However, this indication referred to Defendant's challenge of his September 1 arrest, not the officers's initial stop of Ms. Abrams's car. (*Id.*)

[6]     Of note, Walker's current counsel also conceded at oral argument that the August 2020 discovery was quite generalized.

is required to turn over exculpatory evidence that is material to a defendant's innocence or punishment. However, as the Government pointed out in oral argument, the information Defendant recently obtained was not only not in its possession—it appears that the Cleveland Police Department did not have written policy or materials for the Government to readily turn over. That is to say, this is not a case where the prosecution knowingly suppressed exculpatory evidence from Defendant.

For similar reasons, the Government was not required to turn over this absence of evidence under *Giglio v. United States*, 405 U.S. 150, 154 (1972) ("We do not, however, automatically require a new trial whenever 'a combing of the prosecutors' files after the trial has disclosed evidence possibly useful to the defense but not likely to have changed the verdict."). *Giglio* requires the prosecution to turn over material evidence that could impeach the character or testimony of the Government's witnesses. *Id.* at 153–54. However, under Walker's read of this rule, the Government would be required to turn over officers's records and department policies every time officers issue a traffic citation or detain someone suspected of criminal activity. That is not the purpose of *Giglio*, and Walker does not point to a legal basis for such a wide-sweeping characterization of the rule. Accordingly, the court declines to reconsider its prior ruling that the officers had probable cause to stop Ms. Abrams's car for an excessive tint violation.

   2.   *Search of Ms. Abrams's car*

Walker next argues that because officers lacked reasonable suspicion or probable cause to stop Ms. Abrams's car, the subsequent search of Ms. Abrams's car was illegal. However, unlike the other issues raised in the instant Motion, this court has twice considered the constitutionality of the search of Ms. Abrams car—first under Defendant's initial suppression motion and again under Defendant's Motion for Reconsideration. Therefore, the court finds no basis to readdress this issue

for a third time. At oral argument, Walker contended that his instant argument regarding the search of Ms. Abrams's car—that the officers executed an unlawful search of Ms. Abrams's car when they prevented her from closing the car door during the traffic stop—is a new issue because Defendant is now challenging the lawfulness of the initial traffic stop. Therefore, if the original stop was unlawful, then the subsequent search also was unlawful. Having found no basis to reconsider the Walker's prior concession regarding the legality of the September stop, the court finds this argument unavailing. Rather, the court finds that Walker's current argument regarding this issue is simply a variation of his prior argument regarding the constitutionality of the search of Ms. Abrams's car.

Walker's central argument in his initial suppression motion was that officers unlawfully extended the scope of the initial traffic stop by ordering Abrams to exit her car, and subsequently initiating a search of Abrams' vehicle. (*See* Initial Mot. to Suppress at PageID #202, ECF No. 38). He now argues that the officers initiated the search of Ms. Abrams's car by preventing her from closing the driver's door after officers instructed her to exit the vehicle. In short, Walker's current argument rehashes the same issue raised in his initial Motion to Suppress regarding the lawfulness of the stop, which has already been adjudicated.

In denying Walker's initial motion, the court explained that "the law is clear that 'police officers may order drivers and passengers out of the automobile during the traffic stop without offending the Fourth Amendment." (January 28, 2021 Order at PageID #235, ECF No. 45). Although the court initially concluded that Walker did not have standing to challenge the search of Abrams's car, and noted that such a challenge would be a close call on the merits, the court later determined that the extension of the stop and search was lawful. (*See generally* January 28, 2021 Order, ECF No. 45); (*see also* February 9, 2022 Order at PageID #302–04, ECF No. 59). Having already decided this issue, the court sees no compelling reason to revisit its prior rulings. Walker offers no new

evidence with respect to the search of Ms. Abrams's car, nor does he argue certain evidence related to this issue was unobtainable before the original suppression hearing. Accordingly, the court concludes that further reconsideration of this issue is unwarranted. *See United States v. Mohammed*, 501 F.App'x 431, 437–38 (6th Cir. 2012) (explaining that the district court properly denied a defendant's untimely subsequent motion to suppress because the only apparent reason for the additional motion was to allow the defendant's third appointed counsel to re-litigate the pretrial motions filed by the defendant's first attorney).

3.      *Walker's arrest*

As with Walker's new challenge regarding the legality of the initial stop of Ms. Abrams's car, Walker now argues for the first time that officers did not have probable cause to arrest him on September 1. (Mot. at PageID #860–63, ECF No. 105). However, once again, the court has already addressed this issue, relying in part on another concession by Walker's prior counsel. In challenging the search of Ms. Abrams's car, Walker explained that he "had already been removed from the vehicle, arrested for the outstanding warrant, and escorted in handcuffs to a location behind the vehicle when Ms. Abrams was ordered out of the vehicle. Therefore, this [search] cannot be justified as a search incident to Mr. Walker's arrest." (Initial Mot. to Suppress at PageID #203, ECF No. 38). When the court denied Walker's initial Motion to Suppress, it recognized that Walker had "concede[d] that officers lawfully arrested him [on September 1] pursuant to the outstanding warrant." (January 28, 2021 Order at PageID #235, ECF No. 45) (citing Initial Mot. to Suppress at PageID #202–03, ECF No. 203). The court then concluded that: "once officers initiated a lawful stop [of Ms. Abrams's car], they acted within their authority in asking for identification and conducting a routine records check on both Abrams and Walker. And when the officers discovered the warrant for Walker's arrest, they promptly placed him in handcuffs and moved him behind the car—thereby

ending the traffic stop with respect to Walker and initiating a lawful detention pursuant to the warrant." (January 28, 2021 Order at PageID #235, ECF No. 45) (citations omitted).

Walker did not challenge this conclusion in his Motion for Reconsideration of the court's January 28 Order denying his initial Motion to Suppress. (*See generally* Mot. for Reconsideration, ECF No. 52). In the instant Motion to Suppress, Walker briefly notes that the court's previous finding of probable cause for his arrest was based on his "prior counsel's uninformed concession" of the issue. (Mot. at PageID #1082, ECF No. 113). The court construes this as Walker arguing that his prior counsel may have been ineffective, which could satisfy the threshold requirement of providing a reasonable explanation for why this issue was not raised previously. However, as already established, the remaining reconsideration factors heavily weigh against revisiting the court's prior ruling. Moreover, Walker offers no newly obtained evidence, nor can he contend that the issue of probable cause for his arrest on September 1 is a new issue that only recently became relevant. In the absence of the foregoing, the court once again finds little basis to reconsider its prior ruling on this issue.

Walker also argues that, in the absence of reasonable suspicion to stop Ms. Abrams's car for a suspected window tint violation, "the only other possible basis for the stop of the Ford Focus was a supposed seat belt violation." (Mot. at PageID #853, ECF No. 105). He then devotes a substantial section of his instant Motion to arguing that the officers lacked reasonable suspicion to cite him for a seatbelt violation. (Mot. at PageID #853–56, ECF No. 105); (Reply at PageID #1085–88, ECF No. 113). However, as explained above and as already established by this court's prior rulings, the officers had probable cause to arrest Walker after officers determined there was a warrant for his arrest during a lawfully initiated traffic stop. (*See* January 28, 2021 Order at PageID #235, ECF No. 45). All of the bodycamera footage Walker now relies on to contest the lawfulness of his arrest was

accessible to him during the prior suppression hearing. Therefore, under both the law of the case doctrine and the caselaw regarding whether to reconsider prior rulings on a suppression motion, the court sees no compelling reason to revisit its prior ruling on this point. Accordingly, the court also declines to reconsider its prior rulings regarding whether officers had probable cause to arrest Walker on September 1.

### 4. Walker's Statements

Finally, Walker argues for the first time that the incriminating statements he made on September 1 were involuntary and must therefore be suppressed. In particular, Walker attempts to suppress his admission that the firearm and controlled substances found in Ms. Abrams's car belonged to him because the officers allegedly coerced him into making such an admission with an illusory promise of leniency.

### a) Motion to Reopen

As with Walker's new arguments respective to the August 13 stop, Walker's briefs offer no explanation for why he previously failed to challenge the statements he made to officers on September 1, 2019. (*See generally* Mot., ECF No. 105); (*see also* Reply at PageID #1097–1106, ECF No. 113). Walker also does not point to newly discovered or recently produced evidence regarding the August stop as the basis for the instant suppression motion. However, at oral argument, he argued potential ineffective assistance of counsel as the basis for his failure to raise this issue earlier. As already established, the reconsideration factors weigh against reopening the suppression hearing in this case. Therefore, for the same reasons outlined above with respect to the new challenges Walker raises regarding the August 13 stop, the court would be well within its discretion to decline to reopen the suppression hearing to address the merits of Walker's argument regarding the incriminating statements he made to officers on September 1.

b)      Merits

However, Walker's arguments also fail on the merits. A confession is involuntary if officers engaged in objectively coercive activity that was sufficiently severe to overcome the defendant's will, and the defendant's statements stemmed from that coercion. *United States v. Craft*, 495 F.3d 259, 263 (6th Cir. 2007) (citing *Mahan*, 190 F.3d at 422). When considering whether a confession is voluntary, courts look at a totality of the circumstances to determine whether a defendant's will was overborne by police coercion in a particular case. *Craft*, 495 F.3d at 263. Factors relevant to this totality of the circumstances analysis include the defendant's age, level of education and intelligence, whether the defendant was warned of their constitutional rights, the length of the detention, the repeated and prolonged nature of the questioning, and the use of any physical punishment. *United States v. Reese*, 509 F.App'x 494, 501 (6th Cir. 2012) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973)). Upon review of the record, the court finds that the officers did not engage in coercive tactics while questioning Walker.

The officers's bodycam footage shows officers removing Walker from the Ford Focus, asking him a few questions regarding the potential warrant for his arrest, then moving him to the rear of the police cruiser for additional questioning away from Ms. Abrams. (*See* Ex. X to Def.'s Mot. at 1:50–4:00). At one point, while assisting Walker with his handcuffs, one of the responding officers says, "If you check okay, they're probably going to kick you loose." (*Id.* at 4:23–4:30). This same officer then attempts to explain to Defendant the officers' usual process for investigating outstanding warrant alerts, noting that they are just trying to do their job in questioning Abrams—not trying to keep Defendant from her. (*Id.* at 4:48–6:15).

Shortly after this exchange, Ms. Abrams trips on her shoes and falls to the ground, prompting Defendant to jump up in concern from his seat in the police cruiser. (Ex. O to Def.'s Mot. at

15:48–16:24); (Ex. X to Def.'s Mot. at 6:40–7:00). While Officer Skrletts attempts to help Ms. Abrams back to her feet, the responding officer standing with Walker a few yards away seeks to assure Walker that Abrams is okay. (Ex. O to Def.'s Mot. at 15:48–16:24); (Ex. X to Def.'s Mot. at 6:40–7:00). In doing so, the responding officer says, "If you cooperate with me, I'll help you out." (Ex. X to Def.'s Mot. at 6:35–7:35). As Walker finally begins to sit down, Officer Skrletts then approaches Walker for questioning. (*Id.* at 7:35–8:25). When Officer Skrletts attempts to issue Walker his *Miranda* warnings, Defendant responds "I know my rights."(Ex. O to Def.'s Mot. at 16:50–17:00). Officer Skrletts responds, "I'm gonna advise you anyway," and proceeds to issue Walker his *Miranda* warnings. (*Id.* at 17:00–17:13). After Walker confirms he understands his rights, he answers a series of questions including his age and his relationship to Ms. Abrams. (Ex. O to Def.'s Mot. at 17:14–17:45). However, Walker refuses to answer questions related to the firearm found in Ms. Abrams's car. He instead responds, "I don't know what you're talking about," multiple times. (*Id.* at 17:14–17:57). Officer Skrletts then says to Defendant, "so you're going to let your girl eat the gun?" (*Id.* at 17:57–18:00). After Walker looks over in Abrams's direction, Officer Skrletts admits to Defendant that Ms. Abrams has already tried to cover for Walker, but told officers that the gun is Walker's. (*Id.* at 18:00–18:11). Shortly after this, Walker then admits that the gun is his. (*Id.* at 18:11–18:16).

The court finds that none of the above questioning rises to the level of "objectively coercive activity" that might overbear a defendant's willpower. The officers did not threaten violence or escalate the situation with aggressive questioning or other intimidation tactics. Walker was advised of his *Miranda* rights and maintained that he understood them, demonstrating that he understood the nature of the right being abandoned by willingly answering officers's questions. He also admitted to owning the firearm found in Abrams's car after being detained for approximately twenty minutes

and questioned by Officer Skrletts for roughly one minute, not after a lengthy detention with prolonged questioning. (*See* Ex. O to Def.'s Mot., ECF No. 105).

Walker also contends that one of the responding officer's declaration that, "if you cooperate with me, I'll help you out," was an illusory promise that coerced him into confessing to ownership of the firearm and other contraband found in Ms. Abrams's car. (Mot. at PageID #863–66, ECF No. 105). However, when examined is context, the record indicates that the responding officer's comments were intended to ease Walker's concerns about Ms. Abrams and get him to sit back down in the police cruiser. While it is true that in certain circumstances, "promises of leniency can be objectively coercive, generally, such promises are coercive only if they are broken or illusory." *United States v. Binford*, 818 F.3d 261, 271 (6th Cir. 2016) (citations omitted). Illusory promises are statements in the form of a promise that lack any type of commitment on the part of the police to undertake or refrain from taking any particular course of action. *Id.*; *see also United States v. Johnson*, 351 F.3d 254, 261 (6th Cir. 2003) (explaining that an officer's declaration that "if [a defendant] 'was a witness, and he had no active part in the crime, and that could be confirmed by polygraph, that he would not be charged'" was an illusory promise and objectively coercive). That is not the kind of statement at issue in this case.

In this case, the officer's statement was not intended to elicit testimonial evidence or coerce Walker into making an incriminating statement. In fact, before telling Walker, "if you cooperate with me, I'll help you out," the responding officer repeatedly explained to Walker that Ms. Abrams was okay and that she "just tripped over her sandal." The officer also repeatedly asked Walker to sit down, which Defendant did not do. When the officer's repeated requests went unanswered, he explained,  "Just have a seat, I'll let you talk to her." Despite this, Walker still tried to talk to Ms. Abrams, to which the officer responded, "I told you, you're ignoring me. [...] If you'll cooperate with

me, I'll help you out." (Ex. X to Def.'s Mot. at 6:35–7:35). When examined in context, it is clear that the alleged illusory promise was made in the course of the officer attempting to assuage Walker's concerns about Abrams, who had just fallen to the ground after tripping on her shoes. Accordingly, the court finds that the officer's statement was not an illusory promise.

Because Walker cannot establish that the officer's statement was objectively coercive, the court also finds that Defendant cannot establish that his *Miranda* waiver was involuntary. *See Binford*, 818 F.3d at 272 (declining to analyze the remaining two *Mahan* factors where the defendant could not satisfy the threshold issue of whether the officers' actions were objectively coercive). Therefore, the court finds that Walker's attempt to suppress the statements made to officers on September 1 also fails on the merits.

### III.  CONCLUSION

For the foregoing reasons, the court denies Walker's Motion to Suppress Evidence (ECF No. 105).

IT IS SO ORDERED.

*/s/ SOLOMON OLIVER, JR.*
UNITED STATES DISTRICT JUDGE

July 12, 2024